**Opinion issued February 28, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00345-CV

_____

**ENTERPRISE FIELD SERVICES, LLC, Appellant**

**V.**

**TOC-ROCKY MOUNTAIN, INC., Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-71221**

---

**O P I N I O N**

In this interlocutory appeal, we consider whether the trial court erred in denying appellant's motion to compel arbitration.[1] Specifically, we consider whether appellant waived arbitration by substantially invoking the judicial process.

## BACKGROUND

### *The San Juan Gas Gathering System*

This suit involves the gathering of gas in the San Juan Basin in New Mexico. Gathering is the collecting of natural gas at the wellhead and delivering it via a collection of smaller pipelines to processing plants. Appellant, Enterprise Field Services, LLC. ["Enterprise"], owns one of the major gathering systems in the San Juan Basin.

There are two processing plants connected to the Enterprise gathering system. The first is the Chaco plant, which Enterprise owns. The second is the San Juan Gas Plant, which is jointly owned by appellee, TOC-Rocky Mountain, Inc. ["TOC"],[2] and ConocoPhillips ["Conoco"]. Processing at these plants involves separating natural gas liquids ["NGLs"] from residue gas, which are then redistributed at the plant tailgate to pipelines for residue gas and NGLs, respectively. Once separated, it is necessary to allocate the NGLs among the

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (Vernon 2011) (providing for interlocutory appeal of order denying arbitration under the Texas Arbitration Act); TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2012) (providing for interlocutory appeal of order denying arbitration under the Federal Arbitration Act).

[2] TOC is a wholly-owned subsidiary of BP America Production Company ["BP"].

various gas producers who sent gas to the plant for processing. This allocation can be quite complicated because, even though two wells might product the same volume of gas, the NGLs in the gas stream might be quite different, and once the gas enters the gathering system the gas is mixed together and it is not possible to determine whose gas went to which plant.

*The Straddle Agreement*

In 1984, Conoco, Tenneco (TOC's predecessor-in-interest) and El Paso (Enterprise's predecessor-in-interest) entered into an agreement, which allowed Conoco to build the San Juan Gas Plant in a location that "straddled" El Paso's gathering system. The Straddle Agreement, as it became known, contained a "baseload obligation" that required Enterprise to deliver enough gas to fill the San Juan Gas Plant to capacity for 20 years. During the 20 years after the Straddle Agreement was executed, Enterprise delivered gas produced by Conoco, TOC, as well as gas produced by third parties, to the San Juan plant. Conoco and TOC were allowed to keep the NGLs allocated to their own wells. In addition, as a processing fee, they were allowed to keep 39% of the NGL's allocated to the third-party gas. To calculate this 39% processing fee, Conoco and TOC first had to determine the proportion of NGLs attributable to third parties. Therefore, the Straddle Agreement contained the following provision for allocating NGLs.

3

Allocation of Products Saved and Sold shall be made by Plant Owners [Conoco and TOC] on a monthly basis and in accordance with the procedures described in Exhibit B.

Exhibit B contains a complex mathematical formula for allocating NGLs.

The Straddle Agreement does not contain any arbitration provisions.

### *Performance Under the Straddle Agreement For the First 20 Years*

For the first few years that the Straddle Agreement was in effect, Conoco and TOC—the Plant Owners—performed the allocation required by the agreement. However, in 1986, Enterprise began to perform the allocation, even though the terms of the Straddle Agreement did not require it to do so. Enterprise claims that it performed this task "as an accommodation" to Conoco and TOC. TOC, however, contends that Enterprise's action "effectively modif[ied] the Straddle Agreement," thereby requiring Enterprise to perform the allocation as described in the agreement.

### *The 2006 Gathering Agreement*

In April 2006, Enterprise and TOC's parent corporation, BP, agreed to a long-term gathering agreement called the Gas Dedication, Gas Gathering and Production Area Services Agreement ["Gathering Agreement"]. The Gathering Agreement does not specifically address how NGLs will be allocated. Instead, section 9.6 of the Gathering Agreement provides in part:

Gatherer [Enterprise] and Shipper [BP] acknowledge and agree that it is the desire of both Parties that Gatherer settle all liquids entrained in

4

the Natural Gas, gathered through Gatherer's System and obtain by extraction at the products extraction service located at either the Chaco Plant of the San Juan Plant, as though the Chaco Plant and the San Juan Plant were operated as a single system . . . . [A]s of the date of execution of the Agreement, Gatherer does not have the contractual right or obligation to perform a settlement of liquids and residue Natural Gas as described in the foregoing sentences. Notwithstanding the foregoing, Gatherer agrees to enter into good faith negotiations with the owners of the San Juan Plant, and Shipper agrees to cause its affiliate which owns an interest in the San Juan Plant to enter into good faith negotiations with Gatherer, toward an agreement to allow Gatherer to perform a settlement of such liquids and residue Natural Gas on the basis set forth in Paragraph 9.6(a)(i), (ii) and (iii) below.

Thus, the Gathering Agreement provides that Enterprise and BP's affiliate, TOC, will enter good faith negotiations to reach an agreement on how NGLs should be allocated. The parties then agreed to negotiate toward an allocation method based on totaling all the NGLs produced in the region and dividing them on a pro rata basis.

The Gathering Agreement contains an arbitration provision, in which the parties agree to arbitrate "dispute[s] related to the interpretation or performance of this agreement[.]"

*Conduct of the Parties after the 2006 Gathering Agreement*

In 2007, Enterprise changed the method that it had been using to produce the NGL allocation. Enterprise claimed that this was done because its "baseload obligation" under the Straddle Agreement had expired in 2006 and it was no longer delivering "third-party" gas to the San Juan Gas Plant for processing, and instead

5

delivered all "third-party" gas to its own Chaco Plant. Thus, Enterprise's position was that the only NGLs at the San Juan Gas Plant belonged to either Chevron or TOC and there was no 39% processing fee on "third-party gas" to calculate.

While Enterprise and BP were able to come to agreement as to the terms under which Enterprise would be obligated to deliver BP's gas to the San Juan Gas Plant under the 2006 Gathering Agreement—with the exception of an agreement as to NGL allocation—Enterprise and Conoco were not able to reach such an agreement. Thus, they agreed to extend portions of the Straddle Agreement on a month-to-month basis. In 2009, Conoco instituted a regulatory complaint against Enterprise before the New Mexico Public Regulation Commission alleging that Enterprise was refusing to offer Conoco competitive terms for gathering gas.

In 2010, Enterprise responded by terminating Conoco's month-to-month gathering agreement. Enterprise also terminated the Straddle Agreement because Conoco claimed that it, too, contained an obligation for Enterprise to gather Conoco's gas and deliver it to the San Juan Plant.

### *Enterprise files the Present Lawsuit*

In October 2010, Enterprise filed the present declaratory judgment action against Conoco seeking a declaratory judgment that (1) Enterprise has no obligation to gather gas owned by Conoco in the San Juan Basin, (2) Enterprise has no obligation to deliver gas owned or controlled by Conoco in the San Juan Basin

6

to the San Juan Gas Plant, and (3) the Straddle Agreement has expired or terminated by its terms.  Although these claims did not directly involve TOC at the time, Enterprise joined it as a defendant because TOC is a party to the Straddle Agreement and it anticipated that Conoco would claim that TOC was a necessary party.

### TOC files its Original Counterclaim

TOC filed its First Original Counterclaim, seeking damages from Enterprise for breaching the Straddle Agreement's provisions regarding the allocations of NGLs.  TOC also sought a declaratory judgment from the Court "interpreting the validity of the Straddle Agreement [&] the Gas Gathering Agreement . . . and all related amendments for purposes of setting forth the rights, status, and other legal relations of the parties and damages thereunder, if any."

### Enterprise Settles with Conoco and Seeks to Compel Arbitration with TOC

Soon thereafter, Enterprise settled all of its issues with Conoco.  Thus, the only remaining claim for affirmative relief by Enterprise was its request for a judgment declaring that the Straddle Agreement had expired or terminated.

Enterprise also moved to compel arbitration of TOC's counterclaim. Specifically, Enterprise claimed that arbitration was appropriate because, among other relief, TOC was seeking a declaration of its rights under the 2006 Gas Gathering Agreement, which has an arbitration provision.  Based on this, the trial

7

court was initially inclined to grant Enterprise's motion to compel arbitration. However, it first permitted TOC to amend its counterclaim.

### *TOC Files its First Amended Original Counterclaim*

TOC then filed its First Amended Original Counterclaim, in which it omitted its request for a declaration of its rights under the 2006 Gathering Agreement. Instead, TOC's amended counterclaim claimed only a breach of the Straddle Agreement and request for declaratory judgment as to the rights and duties of the parties under the Straddle Agreement, including a request for a declaration that the Straddle Agreement "remains in full force and effect for the purpose of allocating natural gas liquids[.]"

### *The Trial Court Denies Enterprise's Motion to Compel Arbitration*

Enterprise then filed a second "Motion to Compel Arbitration of the First Amended Original Counterclaim of Defendant TOC-Rocky Mountain, Inc. and to Stay Proceedings in This Court." In this motion, Enterprise sought to compel arbitration of TOC's counterclaim for breach of the Straddle Agreement and declaratory judgment, but to stay the trial court's resolution of Enterprise's own request for declaratory judgment that the Straddle Agreement had expired. Essentially, Enterprise argues that TOC's claim for breach of the Straddle Agreement "touches on" the terms of the 2006 Gathering Agreement; thus, the Gathering Agreement requires arbitration.

8

On March 15, 2012, the trial court denied Enterprise's Motion to Compel Arbitration of the First Amended Original Counterclaim and to Stay Proceedings. This appeal followed.

## PROPRIETY OF TRIAL COURT'S DENIAL OF ARBITRATION

In a single issue on appeal, Enterprise contends the trial court erred in concluding that TOC's Amended Counterclaim is not subject to arbitration under the Gathering Agreement.

### *Standard of Review*

The arbitration clause in the 2006 Gathering Agreement references the Texas Arbitration Act, but, as both parties agree, the suit involves interstate commerce, which implicates the Federal Arbitration Act. The trial court did not specify which Act it applied. However, because the substantive principles applicable to the analysis in this appeal are the same under both the Federal Act and the Texas Act, we cite in this opinion cases under the Federal Act and Texas Act.

A party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *In re Provine,* 312 S.W.3d 824, 828 (Tex. App.—Houston [1st Dist.] 2009, orig. prodeeding). If the movant establishes that an

9

arbitration agreement governs the dispute, the burden shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *In re Provine*, 312 S.W.3d at 829 (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding)). Once the arbitration movant establishes a valid arbitration agreement that encompasses the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration. *Id.* (quoting *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding)). Because state and federal policies favor arbitration, courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 753. To be subject to arbitration, the "allegations need only be factually intertwined with arbitrable claims or otherwise touch on the subject matter of the agreement containing the arbitration provision*." In re B.P. America Prod. Co.*, 97 S.W.3d 366, 371 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

Generally, we review a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig.

10

proceeding); *see also In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). Whether a valid arbitration agreement exists and whether the arbitration agreement is ambiguous are questions of law that we review de novo. *In re D. Wilson Constr.*, 196 S.W.3d at 781.

### Did the Trial Court Err in Concluding that TOC's Claims Were Not Arbitrable?

The Gathering Agreement contains an arbitration provision, in which the parties agree to arbitrate "dispute[s] related to the interpretation or performance of this agreement[.]" Enterprise contends that the trial court erred in concluding that TOC's counterclaims did not fall within the scope of this provision. Specifically, Enterprise argues that TOC's counterclaims, even though primarily based on the Straddle Agreement, may not be decided without reference to the interpretation of the Gathering Agreement. *See In re B.P. America Prod. Co.*, 97 S.W.3d at 370 (holding that to be subject to arbitration, "allegations need only be factually intertwined with arbitrable claims or otherwise touch on the subject matter of the agreement containing the arbitration provision").

Enterprise argues, and we agree, that the 2006 Gathering Agreement is part of the parties' course of dealing and its terms would necessarily be considered in any litigation involving construction of, and performance under, the Straddle Agreement. TOC's counterclaim is based on the argument that Enterprise was obligated to continue allocating NGLs in accordance with the provisions of Exhibit

11

B of the Straddle Agreement, while the Gathering Agreement contains terms indicating that the parties desired to adopt a new, different method of calculating NGLs, although they had not done so at the time the Gathering Agreement was signed.

Enterprise also points out that several provisions of the Gathering Agreement support their argument that, as of 2006, when the Gathering Agreement was signed, they had no duty under the Straddle Agreement to perform any NGL allocations. Specifically, section 9.6 of the Gathering Agreement provides that "as of the date of the execution of the [Gathering] Agreement, [Enterprise] does not have the contractual right or obligation to perform a settlement of liquids and residue Natural Gas as described in the foregoing sentences."

We express no opinion as to the merit of Enterprise's positions regarding construction, and possible modifications of the Straddle Agreement by the later Gathering Agreement, but agree that claims for a breach of performance under the Straddle Agreement will necessarily involve the interpretation of provisions of the Gathering Agreement, and specifically, the interpretation of section 9.6 of the Agreement.

As such, the trial court erred in concluding that TOC's counterclaims did not fall within the scope of the arbitration agreement in the 2006 Gathering Agreement.

**Can TOC, a Non-signatory to the Gathering Agreement, Be Required to Arbitrate?**

TOC claims that the trial court properly denied Enterprise's Motion to Compel Arbitration because its parent company, BP America Production Company, actually signed the Gathering Agreement. However, in its Amended Counterclaim, TOC judicially admitted the following:

> "BP[3] and [Conoco] each have separate gas gathering agreements with ENTERPRISE to transport their own gas production from their wells to the [San Juan Gas Basin Gas Plant]. In BP's case this agreement is the December 1, 2006 Gas Dedication, Gas Gathering and Production Area Services Agreement by and between Enterprise Field Services, LLC and BP America Production Company (the Gas Gathering Agreement)."

Thus, TOC has pleaded that it "has a separate gas gathering agreement"—the 2006 Gas Gathering Agreement involved in this suit. In its First Amended Original Counterclaim, TOC refers to itself at "BP." It has never complained, either in its pleadings or elsewhere, that it is not bound by the terms of the Gathering Agreement. Thus, it may not now do so before this Court

***Waiver of Arbitration by Substantially Invoking the Judicial Process?***

TOC argued to the trial court, and again argued before this Court on appeal, that Enterprise waived its right to enforce the arbitration provision by seeking to arbitrate TOC's counterclaims under the Straddle Agreement, while maintaining its

---

[3] In its First Amended Original Counterclaim, TOC refers to itself as "BP."

own claim for declaratory judgment under the Straddle Agreement in district court. There is a strong presumption against finding that a party has waived its right to arbitration; the burden to prove waiver is thus a heavy one. *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007); *In re D. Wilson Const. Co.*, 196 S.W.3d at 782. Any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998).

Waiver may be express or implied, but it must be intentional. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996). "A party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment." *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). Waiver is a question of law based on the totality of the circumstances. *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d at 625 (quoting *Perry Homes*, 258 S.W.3d at 597). The test for waiver is whether the party moving for arbitration "has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration.'" *Id.*

In determining whether a party waived an arbitration clause, the courts can consider, among other factors: (1) whether the movant for arbitration was the plaintiff (who chose to file in court) or the defendant (who merely responded), (2)

when the movant learned of the arbitration clause and how long the movant delayed before seeking arbitration, (3) the amount of pretrial activity related to the merits rather than arbitrability or jurisdiction, (4) the amount of discovery conducted, and (5) whether the movant sought judgment on the merits. *See Perry Homes*, 258 S.W.3d at 591-92; *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 141 (Tex. App.—Dallas 2009, no pet.).

The Texas Supreme Court has found waiver of arbitration in only one case, *Perry Homes v. Cull.* 258 S.W.3d at 591–92; *see Hawthorne Townhomes, L.P.*, 282 S.W.3d at 142. In that case, the plaintiffs "vigorously opposed" the defendants' motion for arbitration, the parties conducted nearly complete discovery, and the case was set for trial. *See Perry Homes*, 258 S.W.3d at 585. Then, after fourteen months of litigation, the plaintiffs changed their minds and moved for arbitration. The trial court granted the motion four days before the date the case was set for trial. *Id.* The Texas Supreme Court held the arbitration was waived, set aside the arbitration award, and remanded the case for trial. *Id.* at 601.

This case is different from *Perry*. When Enterprise filed the present suit, its initial claims were against Conoco and did not involve TOC's 2006 Gathering Agreement at all. Once Enterprise added TOC to the suit, and TOC filed its counterclaims, Enterprise promptly moved to compel arbitration under the 2006 Gathering Agreement. Discovery in this case has been minimal and the case has

15

been stayed for most of its duration. Enterprise has not sought judgment on the merits.

Nevertheless, TOC contends that Enterprise has waived arbitration by moving to compel arbitration of TOC's claims, while seeking a stay of its own claims in state court. TOC argues that if its claims—particularly its request for a declaration that the Straddle Agreement remains in effect—are arbitrable, as Enterprise claims, then Enterprise's own request for a declaration that the Straddle Agreement has terminated is similarly arbitrable. But no party has asked the trial court to compel Enterprise's claim for declaratory relief; without affirmative conduct in opposition to arbitration, there is an absence of affirmative conduct that indicates an intention to waive the right to demand it.

Under these circumstances, we hold that the trial court erred by concluding that Enterprise has waived its right to arbitration.

## CONCLUSION

Because TOC's counterclaims are within the scope of the arbitration agreement and Enterprise did not waive arbitration, we hold that the trial court erred by denying Enterprise's Motion to Compel Arbitration. Accordingly, we reverse the trial court's order and remand for further proceedings compelling arbitration.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.