**Opinion issued October 1, 2015**



In The

# Court of Appeals

### For The

# First District of Texas

————————————

### NO. 01-15-00194-CV

————————————

## AN LUXURY IMPORTS LTD., D/B/A BMW OF DALLAS, INC., AN LUXURY IMPORTS GP, LLC, AND UNITED STATES WARRANTY CORP., Appellants

### V.

## D. SCOTT SOUTHALL, Appellee

---

### On Appeal from the 295th District Court
### Harris County, Texas
### Trial Court Case No. 2014-33551

---

### MEMORANDUM OPINION

In this appeal we determine whether the trial court erred in denying a car dealer's motion to compel arbitration in this suit for breach of warranty against the dealer and its warranty administrator. AN Luxury Imports, Ltd. d/b/a BMW of

Dallas (BMW Dallas), AN Luxury Imports GP, LLC, and United States Warranty Corp. (U.S. Warranty) (collectively, "the sellers") appeal the denial of their motion to compel arbitration against D. Scott Southall, BMW Dallas's customer. The sellers contend that the trial court erred in denying the motion because the parties' dispute is subject to an enforceable arbitration agreement. We conclude that the trial court erred by denying the motion to compel arbitration and therefore reverse.

## Background

In December 2013, Southall purchased a Porsche Cayman from BMW Dallas. In connection with the purchase, Southall and BMW Dallas executed a retail purchase agreement, an arbitration agreement, and a used vehicle limited mechanical warranty. The parties signed these agreements contemporaneously with each other. The arbitration agreement provides:

> [Southall] and [BMW Dallas] agree that arbitration will be the sole method of resolving any claim, dispute, or controversy . . . that either Party has arising from Customer[]/Dealership Dealings. Such [c]laims include . . . (2) [c]laims relating to any . . . warranties . . . and (5) [c]laims arising out of or relating to . . . this [a]greement and/or any and all documents executed, presented or negotiated during Customer[]/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this [a]greement that arises out of the Customer[]/Dealership Dealings.

The purchase agreement incorporates the arbitration agreement by reference: "If [the purchaser] ha[s] executed an Arbitration Agreement in conjunction with this Agreement such Arbitration Agreement shall be incorporated herein by

2

reference and made a part of this Agreement." The arbitration agreement provides that if there is any conflict between the purchase agreement and the arbitration agreement, the purchase agreement governs.

The purchase agreement also contains a forum selection clause. It provides that the "sole and exclusive venue for any dispute or litigation arising under or concerning this [purchase agreement] shall be in the courts located in and for the county in which [BMW Dallas] is located, and the parties irrevocably consent to the jurisdiction of said court. Any and all arbitration proceedings shall also take place in the county where the dealer is located, unless agreed otherwise by the parties."

BMW Dallas issued the warranty and "appointed United States Warranty Corporation as the authorized Administrator for th[e] . . . Warranty." The warranty does not refer to the arbitration agreement or the purchase agreement.

The Porsche engine failed within two months of the sale. Southall filed a claim with U.S. Warranty for the damage. U.S. Warranty denied the claim, determining that Southall had caused the damage by driving the Porsche during "racing or other competition." Southall's mechanic disagrees; he concluded that the Porsche already had exceeded its maximum allowable RPM before Southall bought it.

Southall sued for breach of contract, breach of warranty, negligence, unfair settlement practices under the Texas Insurance Code, fraud by nondisclosure, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, and the federal Magnuson-Moss Warranty Act. The sellers moved to compel arbitration; the trial court denied the motion.

## Discussion

### Standard of Review

The arbitration agreement states that the Federal Arbitration Act governs its enforcement. This appeal thus arises under section 51.016 of the Texas Civil Practice and Remedies Code, which permits an interlocutory appeal from an order denying a motion to compel arbitration under the Federal Arbitration Act (FAA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015). We review an order denying a motion to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo. *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd).

### Applicable Law

A party moving to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *In re Provine*, 312 S.W.3d 824, 828–29 (Tex. App.—

4

Houston [1st Dist.] 2009, no pet). "Once the trial court concludes that the arbitration agreement encompasses the claims . . . the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001).

Once a party seeking arbitration carries its initial burden to prove the existence of a valid agreement to arbitrate, then a strong presumption favoring arbitration arises. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34, 41 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "[C]ourts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). An order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause does not cover the dispute. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S. Ct. 1347, 1353 (1960); *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding) (per curiam).

To determine whether the parties formed an agreement to arbitrate, we apply ordinary state-law principles governing contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding); *J.M. Davidson, Inc.*, 128

S.W.3d at 227–28; *accord JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007). The elements of a valid contract are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Contract terms will be given their plain, ordinary, and generally accepted meanings, unless the contract indicates a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

Instruments pertaining to the same transaction may be read together to ascertain the parties' intent. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). In appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument. *Id.* at 840; *Courage Co., L.L.C. v. Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

*Analysis*

The sellers contend that they have produced a valid arbitration agreement and that Southall's claims fall within its scope. Southall responds that the

6

arbitration agreement does not require arbitration because it conflicts with provisions of the purchase agreement, which controls in the event of a conflict. Southall further responds that the warranty does not contain an arbitration provision and thus his warranty claim is not subject to arbitration.

## I. Validity of the Arbitration Agreement

The arbitration agreement provides that it applies to claims arising from a purchase of a vehicle from BMW Dallas. Southall and BMW Dallas signed the arbitration and purchase agreements at the same time, and the agreements reference one another. Southall and BMW Dallas's contemporaneous execution of the agreements is evidence of their intent to read the agreements together. *See Palm Harbor Homes*, 195 S.W.3d at 676; *Prime Prods.*, 97 S.W.3d at 636. Accordingly, we read them as a "single, unified instrument." *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840. Because the purchase and arbitration agreements reference one another, and the purchase agreement expressly incorporates the arbitration agreement, the sellers have met their burden to demonstrate a valid, enforceable arbitration agreement in connection with Southall's purchase. *See Palm Harbor Homes*, 195 S.W.3d at 676; *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840; *In re Provine*, 312 S.W.3d at 828–29; *Prime Prods.*, 97 S.W.3d at 636.

Southall relies on the forum selection clause to contend that the purchase agreement contravenes the arbitration agreement. That clause places venue in the

7

county in which BMW Dallas is located should litigation arise. But the clause further provides that "[a]ny and all arbitration proceedings shall also take place in the county where [BMW Dallas] is located." The purchase agreement expressly contemplates arbitration as a means of dispute resolution; the venue provision does not conflict with the arbitration agreement.

We hold that the arbitration agreement is valid and enforceable.

## II.     Scope of the Arbitration Agreement

The sellers next contend that the trial court should have compelled arbitration because Southall's claims fall within the scope of the arbitration agreement. In *Speedemissions, Inc. v. Bear Gate, L.P.*, this court examined a securities purchase agreement, which contained an arbitration agreement, and lease agreements, which did not. We held that the trial court properly denied a motion to compel arbitration in a dispute about the lease agreement. 404 S.W.3d 34, 37, 42, 44 (Tex. App.—Houston [1st Dist.] 2013, no pet.). This court reasoned that different parties executed the two agreements, and each agreement had a "distinct and separate purpose." *Id.* at 43. There were no provisions in the lease agreements relating their performance to the securities purchase agreement, and neither agreement referenced the other. *Id.* at 44, 46.

In contrast, in *Enterprise Field Services, LLC v. TOC-Rocky Mountain, Inc.*, we held that a party's counterclaims regarding an ancillary agreement fell within

8

an arbitration provision. 405 S.W.3d 767, 773–74 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In one agreement, the parties agreed to arbitrate "dispute[s] related to [] interpretation or performance." *Id.* at 773. Although the counterclaims were based on a different agreement, they required interpretation of the agreement containing the arbitration clause. *Id.* Because the two agreements were intertwined, we held that the trial court erred in concluding that the claims did not fall within the scope of the arbitration agreement. *Id.* at 774.

This case is more analogous to *Enterprise Field Services*. BMW Dallas issued the warranty and appointed U.S. Warranty as the authorized administrator. The warranty, purchase agreement, and arbitration agreement were executed by the same parties, contemporaneously and as part of the same transaction. The arbitration agreement applies to "any claim, dispute, or controversy" that arises out of the "Customer[]/Dealership Dealings." Customer/dealership dealings include the process of "purchasing or leasing a vehicle[]." "Claims" is broadly defined to include claims relating to warranties, and those relating to "any and all documents executed, presented or negotiated during Customer[]/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this Agreement that arises out of the Customer[]/Dealership Dealings." Because the arbitration agreement applies to claims arising out of the purchase, and the agreement expressly covers

9

all other contemporaneously signed agreements and warranty claims, we hold that Southall's claims against the sellers fall within its scope. *See Enterprise Field Servs.*, 405 S.W.3d at 774. Although the warranty does not contain a separate arbitration provision, its execution in conjunction with the other agreements connotes a "single, unified instrument." *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840. Accordingly, we hold that Southall's claims arising from the purchase of the vehicle and the warranty, including the transaction with U.S. Warranty, fall within the scope of the arbitration agreement.

Southall further responds that the arbitration agreement does not govern his claims under the Magnuson-Moss Warranty Act. Under the Act, all warranties must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty," including "[a] brief, general description of the legal remedies available to the consumer." 15 U.S.C. § 2302(a)(9) (2013). The warranty contains an integration clause stating that the warranty is a "complete statement of coverage and rights" and does not incorporate the arbitration agreement by reference. Southall cites *Cunningham v. Fleetwood Homes of Georgia* as support for his contention that the warranty itself must contain the arbitration provision. *Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611 (11th Cir. 2001).

The Act allows informal dispute settlement procedures only if they are clearly expressed in the warranty. *See* 15 U.S.C. § 2302(a)(8). The Eleventh Circuit held in *Cunningham* that "informal dispute settlement procedures" included binding arbitration. *See* 253 F.3d at 623 (citing 15 U.S.C. § 2302(a)(8)). In that case, the purchasers of a mobile home executed a stand-alone arbitration agreement as part of the sale and received a separate manufacturer's warranty. 253 F.3d at 613. The court held that the Act required the manufacturer to disclose informal dispute settlement procedures, including binding arbitration, in a single document. *Id.* at 623–24.

In a subsequent case, however, the Eleventh Circuit retreated from *Cunningham,* observing that the *Cunningham* court improperly had conflated binding arbitration with informal dispute settlement procedures, and neither the statutory language nor its legislative history supported such an interpretation. *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1276 (11th Cir. 2002). The Fifth Circuit's opinion in *Walton v. Rose Mobile Homes LLC* supports this latter conclusion. 298 F.3d 470 (5th Cir. 2002). Like the Eleventh Circuit in *Davis,* the Fifth Circuit in *Walton* concluded that the two procedures are distinct, observing that informal dispute settlement procedures happen *before* suit is filed while binding arbitration happens as a *substitute* for filing suit. *Walton*, 298 F.3d 470, 475–76 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

11

614, 628 (1985)). Following *Walton* and *Davis,* we similarly hold that nothing in the Act precludes enforcement of a stand-alone arbitration agreement signed in connection with an express warranty.

## Conclusion

Because an enforceable arbitration agreement governs the claims against the sellers, we reverse the order of the trial court and remand the case for further proceedings consistent with this opinion.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.