

# NUMBER 13-20-00111-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **VICTOR HUGO GRACIA ROMAN,** | **Appellant,** |
| **v.** | |
| **MYRNA ELIZABETH HERRERA,** | **Appellee.** |

### On appeal from the 370th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Benavides

Appellant Victor Hugo Gracia Roman (Gracia) appeals the trial court's denial of his motion to compel arbitration related to a premarital agreement with appellee Myrna Elizabeth Herrera. By two issues, which we address as one, Gracia states the trial court erred by denying his motion to compel arbitration (1) when the premarital agreement contained an arbitration clause governing the validity, construction, and enforceability of

all provisions contained in the premarital agreement and (2) Herrera failed to carry her burden of proving that Gracia substantially invoked the judicial process and she was prejudiced by his invocation of the judicial process. We reverse and remand.

## I.    BACKGROUND

Gracia and Herrera were married on March 24, 2014. Three days prior to the marriage, Gracia and Herrera executed a premarital agreement at Gracia's attorney's office. Gracia told Herrera to seek her own legal counsel to review the premarital agreement, which Herrera did before she signed the premarital agreement. Contained in the premarital agreement was Article 17 titled "Arbitration" which stated:

> The parties agree to submit to binding arbitration any dispute or controversy regarding the validity, interpretation, or enforceability of this agreement, as well as all issues involving its enforcement in connection with a dissolution proceeding between the parties. Each party expressly waives any right to trial by a court or trial by a jury. If a dissolution proceeding or declaratory judgment proceeding is filed in Texas, the arbitrator appointed under this agreement will simultaneously be designated as a special master under the Texas Rules of Civil Procedure, and the parties agree to jointly apply to the court for any orders that are necessary to vest the arbitrator with all powers and authority of a special master under the rules.

> The parties agree to appoint one arbitrator, who[se] decisions will be binding in all respects. Any arbitrator appointed by the parties must be an attorney who has undergone arbitration training conducted by the American Bar Association or the American Academy of Matrimonial Lawyers and is in good standing with the State Bar of Texas. The arbitrator must also be board certified in family law by the Texas Board of Legal Specialization. The first party requesting arbitration must designate the name of an arbitrator in the request. The other party must then designate the name of an arbitrator. If the parties cannot agree on a [sic] arbitrator within fourteen days after either party's written request for arbitration, the two designees must select a qualified arbitrator, who will be designated as the sole arbitrator of the dispute. If the parties cannot agree on the ground rules and procedures to be followed during the arbitration proceedings, the arbitrator shall have the sole authority to establish the ground rules and procedures to be followed during the arbitration proceeding. The parties agree to attend the arbitration

2

on the date and at the time and place set by the arbitrator. The cost of arbitration must be borne as the arbitrator directs. The award of the arbitrator will be binding and conclusive on the parties, and judgment setting forth the arbitration award must be entered in any court of competent jurisdiction.

Herrera filed for divorce on July 9, 2014. Her original petition did not mention the premarital agreement.[1] Almost two years later, on March 29, 2016, Herrera filed a first amended petition and stated that Gracia had committed adultery, requested substituted service of Gracia, requested reimbursement to the community estate of any funds or assets used to benefit Gracia's separate estate but still failed to mention the premarital agreement. Gracia responded and filed his original answer in April 2016, which was a general denial requesting a jury trial, but he also did not mention the premarital agreement.

In May 2016, Herrera filed a second amended petition alleging adultery and fraud, requesting reimbursement but finally stated that a premarital agreement existed. Herrera requested that the premarital agreement be set aside and vacated because it was "entered involuntarily and the agreement was unconscionable when entered." In her second petition, Herrera also claimed that H&Y Ltd., Gracia's business, was the alter ego of Gracia.[2]

In June 2016, Gracia filed his motion to compel arbitration and motion for protective order. Gracia argued that "any disputes or controversy regarding the validity,

---

[1] Gracia was not served with the original petition for divorce.

[2] H&Y Ltd. would later be added as a third-party to the divorce proceedings in Herrera's third amended petition.

interpretation, or enforcement" of the premarital agreement were to be subjected to binding arbitration as per the agreement. In August 2016, Gracia filed a first amended answer where he issued a general denial and objected to a trial by the court or a jury based on the premarital agreement.

The trial court held a brief hearing on June 30, 2016, and reset the hearing on the motion to compel arbitration for August 2016. At the same time, the trial court ordered that discovery continue until the August hearing. No hearing was held, and Herrera obtained a default judgment as to H&Y Ltd. in October 2016, which was later set aside by an agreed order.

In August 2019, a hearing on Gracia's motion to compel arbitration was finally conducted. The trial court heard testimony from Herrera's initial attorney who reviewed the premarital agreement with her and Herrera. Herrera's initial attorney said they reviewed the premarital agreement and Herrera signed it, but he had no file or records of Herrera's visit. Herrera testified that the initial attorney looked at the premarital agreement, said it was "standard," and wrote a letter for her to take to Gracia's attorney, but did not explain anything further.[3] She then went to Gracia's attorney's office and

---

[3] Gracia offered into evidence at the hearing the letter written and signed by Herrera's initial lawyer to Gracia's initial lawyer regarding the premarital agreement which stated:

> This letter comes as confirmation that we have read and discussed the Premarital Agreement, which you provided to us, regarding Ms. Herrera and Mr. Gracia's contract of marriage.

> The Premarital Agreement reviewed is a 27-page document with attached Schedules A, B, C, and D. We have considered the various items on the Premarital Agreement and reviewed it, and explained it, to Ms. Herrera. After such reviewing with our client, our client, Ms. Herrera, wishes to proceed with the marriage and accepts all the provisions of the Premarital Agreement.

signed the premarital agreement without reading it or asking questions regarding any of the provisions contained within it because she trusted Gracia. After they married, Herrera discovered Gracia was having an affair and believed that Gracia only married her to obtain his residency card for the United States. Herrera told the trial court that if her initial attorney had gone through the premarital agreement like her current attorneys did, she would not have signed it and she did not know or understand there was an arbitration clause contained within the premarital agreement. However, Herrera agreed that she did hire her initial attorney later to file the original divorce petition. Gracia's attorney also had Herrera admit that she continued to live in Gracia's home, gave him money, and supported his child from another woman until 2016 when she asked for reimbursement in a subsequent petition filed with another attorney. Herrera also admitted that she had sponsored Gracia to obtain residency in the United States, and when she found out about his affair, she withdrew her sponsorship, causing Gracia to lose his status in the United States.[4] In her testimony, Herrera stated that she owned multiple businesses and had dealt with business-type documents, had the premarital agreement in her hands prior to the marriage, chose not to read it, did not obtain a copy because it did not "have any value to her," and made a mistake not reading the premarital agreement and just trusting Gracia.

After the hearing, the parties submitted letters to the trial court. Relating to the fraud allegation, Herrera's counsel stated:

---

[4] Herrera admitted that Gracia was in the United States legally on a visa when they met.

5

Fraud: I have confirmed that the Court correctly advised counsel at the hearing on this matter that the Supreme Court requires that the evidence of the fraud relate to the arbitration provision itself. The evidence adduced by [Herrera] in the hearing clearly applied to the entire pre-nuptial agreement, and did not focus on the arbitration provision separately, which my client did not even know was included in the document. She is further not sure whether or not the document her lawyer talked to her about was the same document she signed at the lawyer's office of [Gracia], and since her lawyer did not preserve the document, there is no evidence that they were the same. Provided this Court finds waiver of the arbitration clause, this Court will then try the issue of fraud related to the premarital agreement. If this Court fails to find waiver occurred, then the fraud issue will be tried in arbitration.

Herrera's lawyer also stated that she was prejudiced due to "voluminous" discovery requests from Gracia and substantial fees and expenses incurred from having to continue the litigation. Gracia argued that there was no evidence of prejudice to Herrera submitted at the hearing in August of 2019.

In February 2020, the trial court issued the following order denying Gracia's motion to compel arbitration which stated:

The Court finds such Motion should be denied because [Gracia] previously has waived any right to arbitrate the subject dispute and [Herrera] would be substantially prejudiced if she were required to arbitrate this dispute after more than 5 years of litigation.

This appeal followed.

## II.    ARBITRATION CLAUSE

By his first issue, Gracia argues the trial court committed error by denying his motion to compel arbitration because the arbitration provision was valid, and the divorce proceedings fell within its scope. In his second issue, Gracia claims the trial court erred by finding Gracia substantially invoked the judicial process and Herrera was prejudiced.

6

## A.    Standard of Review

The trial court's ruling on a motion to compel arbitration is reviewed for an abuse of discretion. *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Enter. Field Servs., LLC v. TOC–Rocky Mountain, Inc.*, 405 S.W.3d 767, 773 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations de novo. *In re Labatt Food Servs., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see Robinson*, 590 S.W.3d at 525. Whether a valid arbitration agreement exists and whether the arbitration agreement is ambiguous are questions of law that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). We review de novo whether an arbitration agreement is enforceable. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *see SCI Tex. Funeral Servs., L.L.C. v. Montoya*, No. 13-19-00088-CV, 2020 WL 5582367, at 4 (Tex. App.—Corpus Christi–Edinburg Sept. 17, 2020, no pet.) (mem. op.).

## B.    Applicable Law

A party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *Bonsmara Nat. Beef Co., v. Hart of Tex. Cattle Feeders, LLC*, 603

7

S.W.3d 385, 397 (Tex. 2020); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). If the movant establishes that an arbitration agreement governs the dispute, then the burden shifts to the party opposing arbitration to establish an affirmative defense to the arbitration agreement. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam); *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *see SCI Tex. Funeral Servs.*, 2020 WL 5582367, at *5.

Because state and federal policies favor arbitration, a strong presumption exists in favor of arbitration and courts are required to resolve doubts regarding arbitrability in favor of referring the dispute to arbitration. *Ellis*, 337 S.W.3d at 862; *In re FirstMerit Bank N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). A court has no discretion but to compel arbitration and stay its own proceedings when a claim falls within the scope of a valid arbitration agreement and there are no defenses to its enforcement. *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 392 S.W.3d 633, 635 (Tex. 2013) (per curiam); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753–54; *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 535–36 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

A valid arbitration agreement creates a strong presumption in favor of arbitration. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018). While an arbitration agreement procured by fraud is unenforceable, the party opposing arbitration must show that the fraud relates to the arbitration provision specifically, not to the broader contract in which it appears. *Forest Oil Corp.*, 268 S.W.3d at 56. If a trial court finds that the claims fall within the scope of a valid arbitration agreement, the "court has no discretion but to

8

compel arbitration and stay its own proceedings." *Id.* (quoting *In re FirstMerit Bank*, 52 S.W.3d at 753–54).

A party asserting implied waiver as a defense to arbitration, as Herrera did, has the burden to prove that (1) the other party has "substantially invoked the judicial process," which is inconsistent with a claimed right to compel arbitration, and (2) the inconsistent conduct has caused it to suffer detriment or prejudice. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–12 (Tex. 2015); *Perry Homes v. Cull*, 258 S.W.3d 580, 593–94 (Tex. 2008). Because the law favors and encourages arbitration, "this hurdle is a high one." *G.T. Leach*, 458 S.W.3d at 512 (quoting *Perry Homes*, 258 S.W.3d at 589–90); *Richmont Holdings*, 455 S.W.3d at 575. A "heavy burden of proof" is required to establish waiver of arbitration rights, and the court must resolve any doubt in favor of arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 702 (Tex. 1998); *In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 478 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.). Whether a party has substantially invoked the judicial process depends on the totality of the circumstances. *G. T. Leach*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 589–90 (listing previous cases where parties did not waive arbitration even though events occurred in the process of litigation).

**C.   Discussion**

**1.   Validity of Arbitration Agreement**

Gracia's first issue argues that the trial court erred because the arbitration agreement was valid and enforceable. The burden fell on Herrera to present evidence of any defense to Gracia's motion to compel arbitration. *See Ellis*, 337 S.W.3d at 862; *Forest*

*Oil Corp.*, 268 S.W.3d at 56. Herrera presented no evidence that the arbitration agreement itself was unenforceable and procured by fraud. Her testimony was that her initial attorney did not review the premarital agreement with her, and she chose not to read it herself. Her testimony did not show any proof that the arbitration agreement was invalid or that Gracia obtained her consent to the agreement by fraudulent means. Gracia told Herrera to seek her own legal counsel to review the premarital agreement, including the arbitration agreement contained within, which Herrera chose to do. Herrera additionally chose not to read or question any of the provisions contained in the premarital agreement, including the arbitration provision. The testimony from her initial counsel and the letter he wrote to Gracia's initial counsel that was entered into evidence stated that he reviewed the premarital agreement and schedules attached to it, which detailed the property each party brought into the marriage, and Herrera agreed to sign it. Additionally, Herrera's own counsel agreed in his post-hearing letter brief that the evidence they presented of fraud or invalidity related to the entire premarital agreement and not to the arbitration agreement. *See Forest Oil Corp.*, 268 S.W.3d at 56. The trial court's order also made no reference to the arbitration agreement being invalid or obtained by fraud; therefore, we understand the trial court to have found the arbitration agreement valid. Additionally, because we determine legal questions under a de novo review, for the reasons laid out previously, we conclude as a matter of law that the arbitration agreement is valid and enforceable. *In re Labatt Food Servs.,* 279 S.W.3d at 643; *see Robinson*, 590 S.W.3d at 525; *In re D. Wilson Constr.,* 196 S.W.3d at 781; *Rachal*, 403 S.W.3d at 843; *see also SCI Tex. Funeral Servs.*, 2020 WL 5582367, at 4. We sustain Gracia's first issue.

10

## 2. Waiver of Arbitration Agreement

Gracia's second issue stated that Herrera did not prove Gracia waived his motion to compel arbitration by substantially invoking the judicial process. The judicial process has been substantially invoked when the party seeking arbitration has taken specific and deliberate actions, after the filing of suit, that are inconsistent with the right to arbitrate or has actively tried, but failed, to achieve a satisfactory result through litigation before turning to arbitration. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding); *In re Christus*, 231 S.W.3d at 478. However, even when a party has substantially invoked the judicial process, a party's right to arbitration is not waived absent a clear showing that the opposing party has been prejudiced. *In re Christus*, 231 S.W.3d at 479.

Waiver occurs only where "a party has acted inconsistently with its right to arbitrate and such actions have prejudiced the other party." *Id.* at 478. Waiver of arbitration must be intentional. *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996). "Merely taking part in litigation" is "not enough" to constitute waiver. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). Merely participating in discovery or taking purely defensive measures do not substantially invoke the judicial process; however, pursuing extensive discovery may substantially invoke the judicial process. *See In re Christus*, 231 S.W.3d at 479.

Some of the factors courts can consider to determine the invocation of the judicial process include:

11

how long the party moving to compel arbitration waited to do so; the reasons for the movant's delay; whether and when the movant knew of the arbitration agreement during the period of delay; how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits; whether the movant requested the court to dispose of claims on the merits; whether the movant asserted affirmative claims for relief in court; the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction); the amount of time and expense the parties have committed to litigation; whether the discovery conducted would be unavailable or useful in arbitration; whether activity in court would be duplicated in arbitration; and when the case was to be tried.

*G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–91.

Here, Gracia was not the movant in the divorce with Herrera; rather, Herrera was the party that filed for divorce. *See G.T. Leach*, 458 S.W.3d at 512. Although she initially filed her petition in 2014, Gracia was not served until Herrera filed an amended petition in 2016. Shortly after he was served, Gracia filed his motion to compel arbitration. The trial court conducted a hearing in June 2016, and although no ruling on the motion was made at that time, the trial court ordered the parties to continue with discovery until the next hearing. During that time period, Herrera added H&Y Ltd. as a third party to the divorce. A default judgment was granted against H&Y Ltd., and H&Y Ltd. filed documents to have the default judgment set aside. The parties included documents relating to discovery from 2016 as evidence during the 2019 hearing and also submitted additional certificates of written discovery through 2018 in a supplemental clerk's record to this Court. At the 2019 hearing, Herrera presented no evidence to show any of these actions caused her prejudice. The only allusion to prejudice Herrera presented was in the form of a letter brief from her current counsel to the trial court following the 2019 hearing. In the letter, counsel stated that Herrera was prejudiced because of the continued litigation,

12

hiring of multiple counsel, "voluminous" written discovery requests that filled up a banker's box, and "more than $30,000 in fees and expenses."[5] Gracia's lawyer responded by stating that the trial court ordered discovery to continue, Herrera was the party who kept amending her pleadings, Herrera's counsel requested the 2016 motion to compel hearing be reset, and Herrera later added H&Y Ltd. as a third-party defendant. Gracia's counsel also stated that discovery concluded in February 2018, and only motions to withdraw as counsel have been heard between that date and the 2019 hearing.

With respect to the *G.T. Leach* factors, we note that Gracia filed his motion to compel arbitration very shortly after he was served with Herrera's petition. *See id.* Although there has been a delay before the 2016 hearing and the trial court's ruling in 2020, the reasons for the delay can be attributed to both parties. Some discovery was conducted between the parties during the period of the delay, but Herrera did not show if that discovery related to the merits of the case, was useful in arbitration, or would be unavailable to be used during the arbitration process. Gracia primarily invoked the judicial process to vacate the default judgment against the third-party defendant, H&Y Ltd., not to pursue any claims related to the divorce. Herrera also did not show that any activity in court would be duplicated in arbitration and the case did not have a trial setting.

A party's litigation conduct aimed at defending itself and minimizing litigation expenses does not amount to substantial invocation of the judicial process. *G.T. Leach*, 458 S.W.3d at 513. We hold that based on the totality of the circumstances in this case,

---

[5] Although Herrera's counsel alleges she had incurred substantial fees during the pendency of this divorce, there was no testimony or evidence presented before the trial court regarding Herrera's legal expenses. Without any evidence, other than Herrera's bare assertion, we do not find the mention of "more than $30,000 in fees and expenses" amounts to prejudice.

13

Gracia did not "substantially invoke the judicial process" with his actions over the last four years.[6] *See id.* at 512; *Perry Homes*, 258 S.W.3d at 589–90.

Additionally, Herrera did not prove that she suffered any prejudice. Delay does not necessarily demonstrate prejudice. *EZ Pawn Corp*, 934 S.W.2d at 90. Both parties hired and replaced attorneys during the four years this case was pending. Herrera added an additional defendant and pursued a default judgment during the divorce. Both parties conducted discovery and the partial deposition of Gracia. Both parties agreed to Rule 11 resets of the trial court hearings. Herrera did not show that the discovery conducted would not be useful in an arbitration. *See G.T. Leach*, 458 S.W.3d at 512. Here, Herrera did not meet her burden to prove that she would be prejudiced by going to arbitration. Therefore, we hold that Herrera has not met the heavy burden required to establish prejudice. *See id.*; *Richmont Holdings*, 455 S.W.3d at 575; *In re Bruce*, 988 S.W.2d at 702; *In re Christus*, 231 S.W.3d at 478.

Because we hold that Herrera failed to meet either prong to show waiver, we sustain Gracia's second issue.

**D.    Summary**

For the foregoing reasons, we conclude that the trial court abused its discretion in denying Gracia's motion to compel arbitration. *See Robinson*, 590 S.W.3d at 525; *Henry*, 551 S.W.3d at 115; *TOC–Rocky Mountain*, 405 S.W.3d at 773.

---

[6] Although the trial court stated that Gracia delayed for over "five" years, he was not served with the divorce petition until 2016. Herrera filed her case in 2014 and waited over a year to serve her petition.

### III.    CONCLUSION

We reverse the trial court's denial of the motion to compel arbitration and remand for proceedings consistent with this opinion.


GINA M. BENAVIDES
Justice


Delivered and filed on the
8th day of April, 2021.