**Opinion issued October 27, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-20-00851-CV

———————————

**TURNBULL LEGAL GROUP, PLLC AND EDWARD RANDOLPH
TURNBULL IV, Appellants**

**V.**

**MICROSOFT CORP., Appellee**

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2019-78266**

---

## MEMORANDUM OPINION

Appellants Turnbull Legal Group, PLLC and Edward Randolph Turnbull IV

(collectively, "the Firm") sought injunctive relief against appellee Microsoft

Corporation in district court. The trial court granted the Firm's requested injunctive

relief. Several months later, the Firm initiated arbitration proceedings against Microsoft. Microsoft requested that the trial court issue an anti-arbitration injunction, arguing that the Firm had waived its right to arbitrate. The trial court agreed with Microsoft and entered an injunction prohibiting the Firm from engaging in arbitration proceedings with Microsoft.

On appeal, the Firm argues that the trial court erred by issuing the anti-arbitration injunction because Microsoft did not demonstrate that the Firm substantially invoked the judicial process or that Microsoft suffered prejudice as a result of the Firm's actions in the district court. We reverse and remand.

**Background**

Turnbull Legal Group, PLLC is a law firm located in Houston that primarily practices criminal defense law. Edward Randolph Turnbull IV is the owner of the Firm. As part of its practice, the Firm uses Microsoft's Office 365 suite of services. The Firm also subscribes to Microsoft's OneDrive, a cloud-based service that provides remote storage of files and data. The Firm's attorneys save files and work product in the cloud through OneDrive and locally on computer hard drives. This information and work product includes evidence produced by the State of Texas during the criminal discovery process, and this evidence "can be graphic in nature."

By creating an account with Microsoft, the Firm accepted the terms set out in a Microsoft Services Agreement ("MSA"). The MSA stated that its services allow

2

users to store and share content, but Microsoft does not "claim ownership of Your Content." The "Code of Conduct" section of the MSA prohibited certain types of conduct, including "do[ing] anything illegal," "engag[ing] in any activity that exploits, harms, or threatens to harm children," and "publicly display[ing] or us[ing] the Services to share inappropriate content or material." If a user violates these terms, Microsoft "may stop providing Services to [the user] or [it] may close [the user's] Microsoft account."

The MSA included a detailed arbitration clause. This clause provided:

> We hope we never have a dispute, but if we do, you and we agree to try for 60 days to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury.** Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA. . . .
>
> > a. **Disputes Covered—Everything Except IP.** The term "dispute" is as broad as it can be. It includes any claim or controversy between you and us concerning the Services, the software related to the Services, the Services' or software's price, your Microsoft account, advertising, marketing, communications, your purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation, **except disputes relating to the enforcement or validity of your, your licensors', our, or our licensors' intellectual property rights. . . .**

If Microsoft's customer service representatives could not solve a user's dispute, the arbitration clause required the user to send a notice of the dispute to Microsoft via

U.S. Mail. The MSA further stated that "[a]fter 60 days, you or we may start an arbitration if the dispute is unresolved."

On October 4, 2019, attorneys at the Firm attempted to login to OneDrive to access files, but they discovered that the Firm's OneDrive account had been suspended due to a suspected violation of the Code of Conduct contained in the MSA. The Firm later learned that, in addition to losing access to the OneDrive account, "files stored on the individual hard drives of attorneys were removed remotely."[1] Attorneys could not access work product relating to their pending criminal cases, some of which had trial dates scheduled for November 2019. Firm attorneys attempted to resolve this problem and regain access to the OneDrive account "[f]ollowing Microsoft's prescribed procedure" of completing a reinstatement form on Microsoft's website, but they were not successful. Over the next few weeks, Firm attorneys spoke with several customer service agents and representatives at Microsoft, including representatives at a local Microsoft store in Houston. Nevertheless, the Firm remained locked out of its OneDrive account. On October 22, Microsoft informed the Firm that the account had been "permanently terminated."

---

[1] Microsoft disputed that it had the capability to do this, stating, "Microsoft does not and cannot remove local copies of OneDrive files saved on a user's device. . . . If Turnbull is not able to access OneDrive files, then those files were stored in OneDrive, linked to its computers, and not saved locally."

4

Microsoft uses a program called PhotoDNA on several of its services, including OneDrive, to scan user content against a database containing portions, or "hashes," of known child sexual exploitation and abuse imagery ("CSEAI"). If PhotoDNA scans an image in a OneDrive account that matches an image contained in the database, a Microsoft employee independently reviews the image and determines "whether the image content is a positive match for [CSEAI]." According to Microsoft, on October 4, 2019, "Microsoft team members independently (via double-blind process) reviewed two images [that] were shared or made public via [the Firm's] OneDrive account, and confirmed they were both [CSEAI]." Microsoft then suspended, and ultimately terminated, the Firm's account.

On October 25, 2019, the Firm and Turnbull filed an ex parte petition for a temporary restraining order and temporary injunction "pending arbitration" seeking to require Microsoft to (1) restore the Firm's access to the OneDrive account and (2) immediately return "all data belonging to [the Firm] in its possession." The Firm acknowledged that the MSA required a "60-day 'informal' resolution procedure possibly leading to formal arbitration." The Firm stated that its request for injunctive relief was made contemporaneously with beginning the informal resolution procedure. It alleged that it had attempted to resolve the dispute by contacting Microsoft customer service agents and representatives, but the representatives had been unable to assist the Firm in regaining access to its OneDrive account. The Firm

therefore requested a temporary restraining order or a temporary injunction in order to access its files, prevent "further imminent and irreparable harm" to its clients, and ensure that Microsoft did not destroy its files and data prior to a hearing on the merits. The Firm indicated that it wished to pursue a damages claim "for Microsoft's violation of its Terms of Service and the DTPA" through the informal resolution process or arbitration.

In its petition, the Firm acknowledged that federal courts are split on whether injunctive relief pending arbitration proceedings could be granted, or whether such relief would "undermine the arbitration proceedings." The Firm argued that any dispute in arbitration would concern "whether OneDrive service should be restored or if [the Firm] is entitled to damages." The Firm further argued that the Firm and its clients would be "severely harmed" if the trial court did not grant an injunction but instead left arbitration as the Firm's sole remedy. The Firm stated that "the temporary restraining order will ensure that any data in Microsoft's possession will not be deleted while [the Firm] await[s] the outcome of informal and formal arbitration."

On October 29, 2019, the Harris County Ancillary Judge granted the Firm's request for an ex parte temporary restraining order. The ancillary judge found imminent harm to the Firm "because Microsoft continues to block access to [the Firm's] One Drive account, which contains data that represents attorney work

6

product necessary for the continued defense of [the Firm's] clients, many of whom are criminal defendants currently in jail with jury trials set to begin as early as November 2019." The judge found the Firm would suffer irreparable injury because harm to the Firm and its clients "will continue to take place until the data held by Microsoft is returned to [the Firm]." Monetary damages alone were inadequate to remedy this harm. The ancillary judge further found that "unless Microsoft is immediately restrained from engaging in the conduct stated herein, Microsoft will continue to withhold the data containing [the Firm's] attorney work product." The ancillary judge enjoined Microsoft from "blocking access" to the Firm's OneDrive account "and from deleting or destroying" the Firm's data stored in the account.

The ancillary judge scheduled a hearing on the Firm's request for a temporary injunction. The ancillary judge ordered Microsoft, prior to the hearing, to "return all data owned by [the Firm] in its possession pending further hearing by restoring access to [the Firm's] OneDrive account as it was prior to October 4th, 2019, the date of the account suspension." The ancillary judge further ordered Microsoft to "safeguard all data belonging to [the Firm] and to prevent its deletion or modification pending further hearing."

On November 13, 2019, the parties filed a joint stipulation modifying the temporary restraining order. The parties agreed to "remove the TRO provision requiring Microsoft to restore access to plaintiffs' OneDrive account and return all

data associated with plaintiff's OneDrive account." They also agreed to extend the temporary restraining order—specifically, the provision that Microsoft safeguard the Firm's data—until the date the court ruled on the Firm's application for temporary injunction. The hearing on this application was later reset to February 17, 2020.

While the Firm's temporary injunction application was pending, the Firm served a request for production of documents on Microsoft. Among other things, the Firm requested production of all documents it had stored on the OneDrive account; all documents and communications "that refer or relate to Microsoft's suspension, investigation, and ultimate termination of [the Firm's] OneDrive account"; and a copy of all policies and codes of conduct applicable to the account. The Firm also sought to depose Microsoft's corporative representative on a list of topics, including the reason Microsoft suspended and terminated the Firm's OneDrive account and any communications concerning this account. The Firm requested that the trial court order Microsoft to respond to the written discovery requests on an expedited basis in advance of the temporary injunction hearing.

On February 7, 2020, Microsoft contemporaneously filed a motion to compel arbitration and an answer subject to the motion. In both filings, Microsoft asserted that it suspended and terminated the Firm's OneDrive account because it had detected CSEAI within the account's files, which violated the Code of Conduct set out in the MSA. Microsoft objected to restoring access to the account and returning

8

files, "as such relief would essentially make the illegal material available through the Internet."[2] Microsoft argued that despite the Firm's acknowledgement of the valid arbitration provision and the 60-day informal dispute resolution procedure in its original petition, the Firm failed to initiate arbitration proceedings after 60 days had elapsed from when the Firm sent notice of the dispute. Because the matter remained unresolved 60 days after the Firm sent notice of the dispute, Microsoft sought to compel arbitration. Microsoft also argued that a temporary injunction was not necessary to preserve the status quo because Microsoft had agreed to safeguard the Firm's data pending a further hearing or arbitration.

In February 2020, the Firm amended its petition for temporary restraining order and temporary injunction pending arbitration. This amended petition requested the same injunctive relief that the Firm sought in its original petition filed in October 2019. This petition also asserted claims against Microsoft for breach of contract, conversion of the Firm's intellectual property, and violations of the DTPA. The Firm sought actual damages, treble damages under the DTPA, costs, and attorney's fees.

---

[2] Microsoft also argued that in situations in which CSEAI is detected in an account, it will not "return any data from the OneDrive account back to the user, as it may become evidence of a potential criminal matter under investigation." Additionally, "Microsoft does not have the ability to go into a OneDrive account to remove or delete specific images or material." It argued that if it is required to return the data in the Firm's OneDrive account, "the [CSEAI] will be available online in its pre-suspension state of being in a shared or public folder," and returning that material would violate federal law.

The Firm also filed a brief in support of its request for a temporary injunction and "in opposition to [Microsoft's] motion to compel arbitration." In this filing, the Firm argued that it receives discovery from various prosecutors' offices in the course of defending its clients and saves that information to OneDrive. The Firm had been in contact with prosecutors concerning the dispute with Microsoft, and the prosecutors "believe[d the Firm] received certain evidence files from the prosecutors in connection with a case that went to trial last year that may have erroneously included CSEAI information." The Firm argued that none of the folders for its active cases contained CSEAI, and Microsoft could "easily return" all of the Firm's files "except for the alleged CSEAI." The Firm also disputed Microsoft's contention that the Firm's claims were subject to arbitration. Noting that the arbitration provision in the MSA did not apply to disputes regarding intellectual property rights, and because the Firm's work product was intellectual property, the Firm argued that its claim "that Microsoft wrongfully took and is refusing to return [its] intellectual property may not be subject to arbitration." The Firm argued that a temporary injunction was necessary because the Firm "cannot wait to receive [its] case files" until after its claims are litigated or arbitrated.

The trial court held an evidentiary hearing on the Firm's request for a temporary injunction. After the hearing, the court granted the requested relief on February 25, 2020. The court specifically found that the Firm and its clients "will

suffer immediate and irreparable injury" because the Firm needed its case files to adequately represent its clients, and Microsoft had refused to return the files. The court further found that the Firm and its clients have no adequate remedy at law because the harm resulting from Microsoft's actions—harm impacting the lives and legal interests of the Firm's clients—"is difficult to quantify and cannot be fully compensated through an award of damages."

The court additionally found that the Firm had shown a probability of success on the merits, ruling that Microsoft did not claim any ownership of the Firm's data, and Microsoft "has no legal right to [the Firm's] case files and attorney work product." The court ordered Microsoft to download all files from the Firm's OneDrive account—except for the two alleged CSEAI images—onto external hard drives and deliver them to the Firm's counsel. The temporary injunction order set a trial date for December 7, 2020. It is undisputed that Microsoft complied with the temporary injunction by delivering hard drives containing the OneDrive files on February 28 and March 2.

The trial court signed a docket control order on March 12, 2020. This order provided that the discovery period would end on January 1, 2021. The order set the trial date for February 1, 2021.

In June 2020, the Firm and Turnbull filed a demand with the AAA, alleging that the MSA required arbitration of their claims against Microsoft. The Firm

asserted the same causes of action that it had raised in its first amended petition for injunctive relief in the trial court: breach of contract, violations of the DTPA, and conversion. The Firm sought monetary damages for each of these claims.

Microsoft withdrew its motion to compel arbitration in July 2020. Contemporaneously, Microsoft filed an answer, raised affirmative defenses to the Firm's claims, asserted a counterclaim seeking declaratory relief, and requested injunctive relief. In this filing, Microsoft argued that the Firm "ignored and waived the MSA's arbitration provision and instead sought injunctive relief and monetary damages from this Court." Microsoft alleged:

> Despite previously claiming the arbitration agreement *does not* apply to its claims because they present an "intellectual property dispute," Turnbull now claims that the damages he originally sought in this Court (where the claims remain pending) may be arbitrated. Arbitration must be agreed to by both parties to be binding. Turnbull waived its right to compel arbitration by pursuing this dispute in this Court, including by litigating through a hearing. Microsoft, too, consented to this court's jurisdiction by participating in that hearing. As a result, no agreed-upon arbitration agreement remains between the parties for this dispute. Microsoft does not consent to arbitrating Turnbull's claims, and Turnbull waived his right to arbitrate this dispute.

Microsoft argued that the Firm engaged in impermissible forum shopping, and it requested a declaration "on the arbitrability of the claims and the validity and enforceability of the MSA." Microsoft also moved for the trial court to enter an "anti-arbitration injunction" enjoining the Firm from pursuing its claims in arbitration because the Firm had waived its right to arbitration.

In response to Microsoft's motion for an anti-arbitration injunction, the Firm requested that the trial court stay the litigation and compel the parties to arbitrate pursuant to the MSA. The Firm pointed out that, several months earlier, Microsoft had moved to compel arbitration and represented that it intended to arbitrate the Firm's claims for damages after the trial court ruled on the temporary injunction request. The Firm further argued that Microsoft could not establish that the Firm had waived its right to arbitrate by substantially invoking the litigation process to the prejudice of Microsoft. The Firm argued that, in its original petition for injunctive relief, the Firm had acknowledged the arbitration provision in the MSA. Due to the time-sensitive nature of the situation and its need to recover its files quickly, the Firm requested temporary injunctive relief "pending arbitration."

The trial court held a hearing and granted Microsoft's motion, enjoining the Firm from submitting the case to arbitration. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (authorizing appeal from interlocutory order if appeal would be permissible under Federal Arbitration Act); 9 U.S.C. § 16(a)(2) (authorizing appeal from interlocutory order granting injunction against arbitration proceeding subject to Federal Arbitration Act).

## Waiver of Right to Arbitrate

In its sole issue on appeal, the Firm challenges the trial court's grant of the anti-arbitration injunction. Specifically, the Firm argues that Microsoft was required

13

to demonstrate that the Firm had substantially invoked the judicial process, and that this invocation prejudiced Microsoft. The Firm argues that no evidence supports either implied finding.

## A. *Standard of Review*

The Federal Arbitration Act ("FAA") generally governs arbitration provisions in contracts that involve interstate commerce. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Under the FAA, state law governs the question whether a litigant agreed to arbitrate, and federal law governs the scope of the arbitration clause. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see Builders First Source–S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 455 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("When reviewing claims under the FAA, we look to federal law to resolve substantive issues, but apply state law to resolve procedural issues."). The MSA in this case specifically provides that it is governed by the FAA, and neither party disputes that the FAA applies.

Under the FAA, a presumption exists that favors agreements to arbitrate. *Henry*, 551 S.W.3d at 115. A party seeking to compel arbitration must establish (1) the existence of a valid arbitration agreement and (2) that the claims at issue fall within the scope of the agreement. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020). If the party seeking to compel arbitration meets this burden, the burden shifts and the party opposing arbitration

must prove an affirmative defense to enforcement of the arbitration provision. *Id.* at 398; *Henry*, 551 S.W.3d at 115. Waiver is an affirmative defense to enforcement of an arbitration provision. *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 (Tex. 2015).

We review a trial court's order on a motion to compel arbitration for an abuse of discretion. *Henry*, 551 S.W.3d at 115; *see also In re Neutral Posture, Inc.*, 135 S.W.3d 725, 730 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (concluding, in mandamus proceeding, that trial court abused its discretion by denying requested anti-arbitration injunction). We defer to the trial court's factual determinations that are supported by evidence, but we review any legal determinations de novo. *Henry*, 551 S.W.3d at 115. Whether a party waived its right to arbitrate is a question of law that we review de novo. *Id.*; *G.T. Leach Builders*, 458 S.W.3d at 511.

## B.   *Whether the Firm Waived Its Right to Arbitration*

A party may waive its right to enforce an arbitration provision. *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders*, 458 S.W.3d at 520. "Waiver—the 'intentional relinquishment of a known right'—can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." *G.T. Leach Builders*, 458 S.W.3d at 511 (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 590–91, 594 (Tex. 2008)); *Nw. Constr. Co. v. Oak Partners, L.P.*,

15

248 S.W.3d 837, 848 (Tex. App.—Fort Worth 2008, pet. denied) ("Waiver may be express or implied, but it must be intentional.").

A party expressly waives its right to arbitrate when it affirmatively indicates that it wishes to resolve the case in the judicial forum rather than through arbitration. *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 781 (Tex. App.—El Paso 2015, no pet.) (quotations omitted); *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see Garcia v. Huerta*, 340 S.W.3d 864, 867–68, 870 (Tex. App.—San Antonio 2011, pet. denied) (stating that express waiver of arbitration occurred when parties stated in settlement agreement that they agreed to waive any rights to enforce arbitration agreement).

Courts can imply a waiver of the right to arbitrate from a party's conduct, but "that conduct must be unequivocal." *Perry Homes*, 258 S.W.3d at 593; *Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 449 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The party's conduct must be unequivocally inconsistent with claiming a known right to arbitration."). A party asserting implied waiver as a defense to arbitration bears the burden to prove that (1) the opposing party has substantially invoked the judicial process, which is conduct inconsistent with a claimed right to compel arbitration, and (2) the inconsistent conduct has caused it to suffer detriment or prejudice. *G.T. Leach Builders*, 458 S.W.3d at 511–12. The law favors arbitration. Consequently, the "hurdle" to demonstrate waiver by

litigation conduct "is a high one." *Id.* at 512 (quoting *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014) (per curiam)).

### 1. Express waiver

Microsoft argues that the trial court properly issued the anti-arbitration injunction because the Firm opposed arbitration and judicially admitted that its affirmative claims were not subject to arbitration because the claims fell within the arbitration provision's exemption for disputes relating to intellectual property. According to Microsoft, the Firm expressly waived its right to arbitrate.

"Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (quoting *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). A judicial admission that is clear and unequivocal "has conclusive effect and bars the admitting party from later disputing the admitted fact." *Id.*

This Court has set out five elements for establishing that a statement is a judicial admission: (1) the statement must be made in the course of a judicial proceeding; (2) it must be contrary to an essential fact or defense asserted by the party; (3) it must be deliberate, clear, and unequivocal; (4) it cannot be destructive of the opposing party's theory of recovery or defense; and (5) enforcing the statement as a judicial admission would be consistent with public policy. *H2O Sols.,*

17

*Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "[I]t would be unjust to permit a party to recover after he has sworn himself out of court by a clear, unequivocal statement." *Khan*, 371 S.W.3d at 357.

For a statement to be a judicial admission, it must be a statement of fact. *See Wolf*, 44 S.W.3d at 568. "A party may not judicially admit a question of law." *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.); *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex. App.—El Paso 1993, writ denied) (stating that ambiguity in divorce decree is question of law and therefore cannot be judicially admitted); *Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 858 (Tex. App.—Texarkana 1992, writ denied) (stating that admission that appraisal was result of clerical error "is of little consequence because that is a question of law, not of fact"). Whether a claim falls within the scope of a valid arbitration agreement is a question of law. *See Henry*, 551 S.W.3d at 115.

After Microsoft moved to compel arbitration while the Firm's application for a temporary injunction was still pending, the Firm filed a brief in opposition to Microsoft's motion to compel. In this brief, the Firm stated:

> Microsoft also argues that [the Firm's] claims are subject to arbitration, which [the Firm] disputes. The arbitration clause Microsoft relies on expressly states that it does not apply to disputes regarding intellectual property rights. [The Firm's] attorney work product is intellectual

property that can be copyrighted and is protected as such. Accordingly, [the Firm's] claim that Microsoft wrongfully took and is refusing to return his intellectual property may not be subject to arbitration.

The Firm further argued that "Microsoft's arguments fail because the Arbitration Clause does not apply to [the Firm's] claims, and, even if the clause did apply, the Court is empowered to issue an injunction in aid of arbitration." The Firm also stated, "The Arbitration Clause may not apply to all of [the Firm's] claims" and "[the Firm's] claims seek to enforce its intellectual property rights, and the Arbitration Clause may not apply to those claims." Additionally, in its first amended petition, filed after Microsoft moved to compel arbitration, the Firm stated, "The Arbitration provision in the parties' agreement does not apply to the claims asserted here." Microsoft argues that these statements are judicial admissions and constitute an express waiver of the Firm's right to arbitrate.

These statements do not constitute an express waiver of the right to arbitrate because these statements are not statements of *fact*. Instead, they are statements concerning a legal question: whether the Firm's claims fall within the scope of the MSA's arbitration provision or fall within the provision's carve-out for intellectual property claims. *See H.E. Butt Grocery Co.*, 955 S.W.2d at 389; *Pierce*, 850 S.W.2d at 679; *Hines Wholesale Nurseries*, 844 S.W.2d at 858.

Furthermore, the Firm's statements do not constitute an express waiver because they are equivocal. Although the Firm stated that "the Arbitration Clause

19

does not apply to [the Firm's] claims," the Firm stated elsewhere that "[t]he Arbitration Clause *may* not apply to all of [the Firm's] claims" and that "[the Firm's] claims seek to enforce its intellectual property rights, and the Arbitration Clause *may* not apply to those claims." (Emphasis added.) These statements suggest that the Firm believed that some, but not all, of its claims fell within the intellectual property carve-out and the remainder of its claims were within the scope of the provision and were arbitrable. The Firm also argued in its brief that, assuming its claims fell within the scope of the arbitration provision, the trial court had the authority to issue a temporary injunction before arbitration proceedings began.

The Firm's statements in its amended petition are similarly equivocal with respect to whether its claims would be resolved in arbitration or litigation:

> Any time spent in arbitration over the coming days or months would not be over "if" the data should be returned, or who owns the data, but only over whether OneDrive service should be restored or if [the Firm] is entitled to damages. If an injunction is not granted but is left to arbitration, [the Firm] and its clients would be severely harmed. In addition, the temporary restraining order will ensure that any data in Microsoft's possession will not be deleted while we await the outcome of litigation and/or informal and formal arbitration.

These statements are not an affirmative indication that the Firm "wishes to resolve the case in the judicial forum, rather than through arbitration." *See Hogg*, 480 S.W.3d at 781; *Okorafor*, 295 S.W.3d at 39. Consequently, the Firm did not expressly waive its right to arbitration. We therefore turn to whether the Firm impliedly waived the right to arbitrate its claims through its litigation conduct.

20

## 2. Implied waiver

The court looks to the totality of the circumstances to determine whether a party has substantially invoked the judicial process. *G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 591 (stating that courts determine waiver of arbitration by litigation conduct on case-by-case basis). We consider a non-exclusive list of factors, including:

- how long the party moving to compel arbitration waited to do so;

- the reasons for the movant's delay;

- whether and when the movant knew of the arbitration agreement during the period of delay;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the movant requested the court to dispose of claims on the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

- the amount of time and expense the parties have committed to the litigation;

- whether the discovery conducted would be unavailable or useful in arbitration;

- whether activity in court would be duplicated in arbitration; and

- when the case was to be tried.

21

*G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–91. Generally, no factor by itself is dispositive. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (per curiam).

"Merely taking part in litigation" is "not enough" to constitute waiver by litigation conduct. *G.T. Leach Builders*, 458 S.W.3d at 512 (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding)). Generally, delay alone does not establish waiver. *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding) (per curiam). "[I]n close cases, the strong presumption against waiver should govern." *Perry Homes*, 258 S.W.3d at 593 (internal quotation marks omitted); *see RSL Funding*, 499 S.W.3d at 430. When considering questions of waiver, we should resolve any doubts in favor of arbitration. *Enter. Field Servs., LLC v. TOC-Rocky Mountain, Inc.*, 405 S.W.3d 767, 774 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 647 (Tex. App.—Dallas 2011, pet. denied).

### a. Whether movant knew of arbitration provision and whether movant filed suit

It is undisputed that the Firm chose the initial forum by filing suit in the trial court in October 2019 and requesting a temporary restraining order and a temporary injunction. *See Perry Homes*, 258 S.W.3d at 591 (considering whether arbitration movant was plaintiff—who chose to file suit in court—or defendant—who merely responded to suit). This factor, however, is not dispositive. The Texas Supreme

22

Court has held that filing suit, by itself, does not substantially invoke the judicial process. *See Richmont Holdings*, 455 S.W.3d at 576; *see also RSL Funding*, 499 S.W.3d at 430 (noting that parties have "taken several different types of action without substantially invoking the judicial process," including filing suit); *Enter. Field Servs.*, 405 S.W.3d at 775 (concluding that party did not waive right to arbitrate even though party filed underlying suit); *Perry Homes*, 258 S.W.3d at 592 (stating that movant's status as plaintiff was "a factor to consider," but it alone did not justify waiver finding and did not "change the basic nature of the totality-of-the-circumstances test").

The Firm acknowledged in its original petition seeking injunctive relief that the MSA contained an arbitration provision allowing the parties to commence arbitration proceedings after a 60-day informal dispute resolution process. The Firm alleged that injunctive relief was necessary to protect the Firm and its clients, some of whom had pending trial dates in the weeks immediately following the filing of the Firm's original petition. The Firm stated that injunctive relief would "ensure that any data in Microsoft's possession will not be deleted while we await the outcome of informal and formal arbitration." The Firm therefore was aware that an arbitration provision potentially governed the resolution of the parties' dispute, and it contemplated that arbitration proceedings would possibly occur. *See Perry Homes*, 258 S.W.3d at 591 (considering "whether the movant knew of the arbitration clause

23

all along"); *PRSI Trading Co. LP v. Astra Oil Trading NV*, No. 01-10-00517-CV, 2011 WL 3820817, at \*3 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. denied) (mem. op. on reh'g) (considering fact that defendant filed answer asserting affirmative defense of arbitration and award but did not move to compel arbitration for another eight months). The Firm was also under extraordinary time pressure to obtain access to its files given the pending November 2019 trial dates for some of its clients.[3]

---

[3] On appeal, Microsoft emphasizes that, under AAA's Consumer and Commercial Arbitration Rules, a party to an arbitration proceeding may seek interim relief, including injunctive relief, from the arbitrator. *See* Commercial Arbitration Rules and Mediation Procedures R-37(a) (effective October 1, 2013), *available at* www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf; Consumer Arbitration Rules R-37(a) (effective September 1, 2014), *available at* www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf. Additionally, under the Commercial Arbitration Rules, a party may seek emergency relief even before an arbitration panel has been assigned, and the AAA will appoint an emergency arbitrator who will consider the request on an expedited basis. *See* Commercial Arbitration Rules, R-38(b)–(g). Microsoft faults the Firm for not pursuing this relief before the AAA and instead filing suit in the district court. Although an arbitrator is empowered to grant emergency relief, the MSA governing the relationship between Microsoft and the Firm still required the parties to try to resolve their dispute informally for sixty days before initiating arbitration proceedings. Given the circumstances facing the Firm and its clients as a result of Microsoft's suspension of the Firm's OneDrive account and Microsoft's reticence to resolve the matter without outside intervention, the Firm's decision to seek injunctive relief in court— a remedy permitted by both the Consumer and Commercial Arbitration Rules—is understandable. *See* Commercial Arbitration Rules and Mediation Procedures R-37(c), R-38(h); Consumer Arbitration Rules R-37(d).

### b. Delay

The Firm did not file an arbitration demand immediately after the informal dispute resolution period ended in late December 2019, sixty days after the Firm filed suit and provided notice of the dispute to Microsoft. Instead, the Firm continued to seek a temporary injunction, sent written discovery requests to Microsoft related to the temporary injunction, and noticed the deposition of Microsoft's corporate representative in preparation for the temporary injunction hearing. When Microsoft sought to compel arbitration in February 2020, the Firm amended its petition to allege causes of action for breach of contract, conversion, and DTPA violations. It also sought actual and treble damages. The Firm's amended petition continued to acknowledge that the MSA contained an arbitration agreement, and the amended petition indicated that the Firm intended to pursue "damages for Microsoft's violation of its Terms of Service and the DTPA" through arbitration. The amended petition also included statements indicating that the Firm was willing to resolve its claims against Microsoft through litigation in a judicial forum.[4]

---

[4] In a section of the amended petition entitled "This Court's Legal Authority to Grant Injunction," the Firm stated: "The Arbitration provision in the parties' agreement does not apply to the claims asserted here. Even if it did apply, this Court has full authority to grant a temporary injunction pending arbitration despite split opinions in the Federal Circuit courts." In the same section of the amended petition, however, the Firm stated, "Any time spent in arbitration over the coming days or months would not be over 'if' the data should be returned, or who owns the data, but only over whether OneDrive service should be restored or if [the Firm] is entitled to damages."

25

The Firm also opposed Microsoft's motion to compel arbitration, arguing that the Firm had asserted claims relating to intellectual property rights, which were exempt from the MSA's arbitration provision. Four months after the trial court issued the temporary injunction in February 2020,[5] the Firm filed an arbitration demand on June 30, 2020, raising the same claims as in its amended petition. The Firm moved to compel arbitration on August 4, 2020. At the time, the case was set for trial approximately six months later, on February 1, 2021.

Microsoft argues that the Firm deliberately delayed seeking arbitration, pointing out that the Firm filed its arbitration demand in June 2020, eight months after the Firm first filed suit seeking injunctive relief. Although we consider how long a party delayed before seeking arbitration, *see Perry Homes*, 258 S.W.3d at 591, "[d]elay alone does not establish waiver." *Garg v. Pham*, 485 S.W.3d 91, 108 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The Texas Supreme Court has held that a two-year delay before seeking arbitration did not "overcome the strong presumption against waiver." *In re Vesta Ins. Grp.*, 192 S.W.3d at 764. Delay is relevant to the determination of whether a party has substantially invoked the judicial process, but "the focus is on the amount of pretrial activity and discovery related to the merits of the case during that time period." *Garg*, 485 S.W.3d at 108; *see*

---

[5] The Firm argues that the parties and the court all contemplated that the Firm's claims for damages would be heard in arbitration, but the Firm acknowledges that these discussions do not appear in the appellate record.

*Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 517 (Tex. App.—

Houston [1st Dist.] 2022, pet. denied) (concluding that twenty-six-month delay

between filing suit and moving to compel arbitration supported finding of waiver

when movants "engag[ed] in significant discovery and motion practice for almost

two years before seeking to compel arbitration").

### c. Discovery

With respect to discovery, the Firm noticed the deposition of Microsoft's

corporate representative and requested production of nine categories of documents

before the temporary injunction hearing.[6] Microsoft argues that these discovery

requests went beyond what the Firm needed for the temporary injunction and instead

related to the merits and "collectively [swept] in all of the documents that TLG might

need to try its case." Microsoft also argues that the Firm would not have been entitled

---

[6] The Firm requested: (1) all documents, information, and data stored on its OneDrive account; (2) all documents and communications that referred or related to the suspension, investigation, and termination of the account; (3) a copy of Microsoft's policies and codes of conduct applicable to the account; (4) all communications with any third-party concerning Turnbull, the account, or data stored in the account; (5) all communications with Turnbull concerning the account or data stored in the account; (6) all internal documents and communications concerning Turnbull or the account; (7) any reports, notifications, or communications sent to governmental agencies or organizations regarding Turnbull or the account; (8) documents relating to Turnbull's efforts to contact Microsoft concerning the account; and (9) Microsoft policies and procedures regarding communicating with OneDrive customers who have problems concerning their accounts.

to obtain this discovery in arbitration under the AAA's Consumer Arbitration Rules.[7] *See* Consumer Arbitration Rules R-22(a) (effective September 1, 2014), *available at* www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf (providing that arbitrator may direct that parties share "specific documents and other information," identify witnesses who will testify at hearing, and share exhibits that will be submitted at hearing, and stating that "[n]o other exchange of information . . . is contemplated" unless arbitrator determines "further information exchange is needed to provide for a fundamentally fair process").

The discovery that the Firm sought did not relate to arbitrability of the parties' claims or to the jurisdiction of the trial court. *See Perry Homes*, 258 S.W.3d at 591–92 (considering how much pretrial activity and discovery related to merits of dispute rather than arbitrability or jurisdiction). Instead, the Firm sought discovery related to the merits of its request for a temporary injunction. This discovery was also relevant to the merits of the Firm's claims for affirmative relief against Microsoft. *See Courtright*, 647 S.W.3d at 518–19 (noting that while some of movants'

---

[7]     Microsoft argues that the AAA's Consumer Arbitration Rules would apply to any arbitration proceeding between the parties because Turnbull had a consumer OneDrive account, as opposed to a business account, and the value of the dispute was less than $75,000. In its arbitration demand, the Firm invoked the AAA's Commercial Arbitration Rules, which have slightly different discovery rules. *See* Commercial Arbitration Rules and Mediation Procedures R-22(b) (providing that arbitrator may require parties to exchange documents in their possession on which they intend to rely, update their exchanges of documents, and make available documents not readily available to other party that are reasonably believed by other party to "exist and to be relevant and material to the outcome of disputed issues").

discovery requests were relevant to requested injunctive relief, some requests were relevant to merits of movants' affirmative claims).

Although the Firm sought merits-related discovery—and filed a motion with the trial court to compel Microsoft to respond expeditiously prior to the temporary injunction hearing—the Firm only submitted nine requests for document production and sought the deposition of Microsoft's corporate representative on similar topics. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704–05 (Tex. 1998) (orig. proceeding) (per curiam) (concluding that defendant did not waive right to arbitrate when it answered and propounded eighteen interrogatories and nineteen requests for production). The record does not demonstrate that the Firm requested any other discovery from Microsoft.

Additionally, the record does not demonstrate that Microsoft fully *responded* to the Firm's discovery requests.[8] This, therefore, is not a situation in which, prior to seeking arbitration, the Firm propounded extensive discovery requests to Microsoft, multiple witnesses were presented for deposition, and Microsoft provided thousands of pages of documents that would not have been available under the limited discovery rules in arbitration. *See Pro. Advantage Software Sols., Inc. v. W. Gulf Mar. Ass'n*, No. 01-15-01006-CV, 2016 WL 2586690, at *4 (Tex. App.—

---

[8]   The Firm represents in its reply brief that the only documents it received from Microsoft in discovery were "publicly available documents."

29

Houston [1st Dist.] May 5, 2016, no pet.) (mem. op.) (considering "[s]ignificant discovery" conducted "by both parties," consisting of tens of thousands of documents produced and depositions of three witnesses, and movant requested additional time to conduct further depositions of experts before moving to compel arbitration); *PRSI Trading Co.*, 2011 WL 3820817, at *3 (considering that party seeking to compel arbitration served merits-related discovery requests, deposed two corporate representatives, deposed corporate representative of third party who had to travel from overseas for deposition, obtained more than 17,000 pages of documents, agreed to appointment of special discovery master, and filed multiple motions to compel discovery); *see also Courtright*, 647 S.W.3d at 518–19 (noting that movants served 47 interrogatories, 135 requests for production, 7 deposition notices, and 2 subpoenas to non-parties, plus movants "conducted many hours of depositions and generated hundreds of pages of testimony").

### d.    Request for disposition on the merits

The Firm did not file a motion for summary judgment or any other dispositive motion on the merits of its claims before moving to compel arbitration. *See Perry Homes*, 258 S.W.3d at 591–92 (considering whether movant filed dispositive motions before seeking to compel arbitration). Nor did it obtain an adverse ruling on the merits prior to filing its arbitration demand. *See Nw. Constr. Co.*, 248 S.W.3d at 848 (stating that party may substantially invoke judicial process when "the party

30

seeking arbitration actively has tried, but failed, to achieve a satisfactory result in litigation before turning to arbitration"); *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (same); *see also Courtright*, 647 S.W.3d at 521 (noting that movants did not move to compel arbitration until after trial court entered adverse rulings against them). Instead, the trial court granted the Firm's requested injunctive relief and ordered Microsoft to return the files in the Firm's OneDrive account, minus the alleged CSEAI material. It is undisputed that Microsoft complied with the temporary injunction order and returned the Firm's files by early March 2020.

Microsoft acknowledges that federal and state law both permit a trial court to grant injunctive relief pending arbitration in limited circumstances, but it argues that the Firm sought relief beyond what is statutorily permissible and instead "invoked the trial court's authority to address the merits" of the dispute. Microsoft contends that "[a]ll of [the Firm's] grievances hinge on [the Firm's] access to its OneDrive Files," and the Firm's request for injunctive relief seeking return of its files was a request for judgment on the merits.

The Fifth Circuit has held that in cases governed by the FAA, a district court may permissibly enter a preliminary injunction to preserve the status quo before it

rules on the arbitrability of a claim.[9] *See Janvey v. Alguire*, 647 F.3d 585, 594–95 (5th Cir. 2011). Moreover, both the Commercial and Consumer Arbitration Rules of the AAA permit a party to seek injunctive relief in the courts and provide that seeking this remedy does not constitute waiver of the right to arbitrate. R-37 of the Consumer Arbitration Rules provides that an arbitrator can grant any necessary "interim measures," including granting an injunction. *See* Consumer Arbitration Rules R-37(a). R-37(d) states that parties to an arbitration agreement "under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate." Consumer Arbitration Rules R-37(d).

Similarly, the Commercial Arbitration Rules allow arbitrators to take "interim measures," including injunctive relief, and "emergency measures of protection." Commercial Arbitration Rules R-37, R-38. R-37(c), concerning interim measures,

---

[9] The Texas General Arbitration Act also includes provisions authorizing a trial court to issue injunctive relief. Civil Practice and Remedies Code section 171.086(a) permits a party to file an application for certain court orders before arbitration proceedings begin "in support of arbitration," including an order to restrain or enjoin "the destruction of all or an essential part of the subject matter of the controversy" or "the destruction or alteration of books, records, documents, or other evidence needed for the arbitration." TEX. CIV. PRAC. & REM. CODE § 171.086(a)(3). A party to an arbitration agreement may also "request an interim measure of protection from a district court before or during an arbitration." *Id.* § 172.175(a). Additionally, "[i]n connection with a pending arbitration, the court may take appropriate action, including . . . granting a preliminary injunction to protect a trade secret or to conserve goods that are the subject matter of the dispute." *Id.* § 172.175(c)(2).

states that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." Commercial Arbitration Rules R-37(c). R-38 allows a party to seek emergency relief prior to appointment of an arbitration panel, but the rule also provides that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate." Commercial Arbitration Rules R-38(h). Seeking injunctive relief in court is thus considered consistent with the right to arbitrate according to the AAA's Consumer and Commercial Rules.

Microsoft argues that the Firm sought more than conservation of the files in its OneDrive account so the files could be viewed by an arbitrator during an arbitration proceeding; instead, the Firm also sought and obtained an order requiring Microsoft to return all the Firm's data. Microsoft argues that this request "goes beyond conservation to the merits of [the Firm's] causes of action, which assert that Microsoft must return this data because retaining it converts [the Firm's] intellectual property and violates the parties' contract."

The Firm sought injunctive relief to obtain access to its files so its clients would not suffer further harm while the Firm's claims against Microsoft were adjudicated through "litigation and/or informal and formal arbitration." It requested "a temporary injunction requiring Microsoft to return all data owned by [the Firm]

in its possession pending arbitration, either through an online service or by some other storage medium, such as a hard drive." In the alternative, the Firm asserted claims for breach of contract, conversion, and DTPA violations, and it sought actual damages and treble damages under the DTPA.

The Firm alleged that Microsoft breached the MSA by terminating the Firm's OneDrive account and removing the Firm's files from its computers, actions that the MSA does not permit Microsoft to take while investigating whether a user has violated the MSA's Code of Conduct. Microsoft also allegedly converted the Firm's intellectual property—including attorney work product—when it blocked the Firm's access to its files through One Drive and removed the files from the Firm's computers. The Firm also alleged that Microsoft violated the DTPA by marketing OneDrive with statements promising that a user can always access their files even while offline. However, Microsoft allegedly accesses a user's hard drive to remove files, and thus OneDrive is not an "appropriate" backup storage method because the files do not always remain on the user's device. Microsoft's claims about OneDrive allegedly represent that OneDrive—a good or service—has characteristics that it does not really have. *See, e.g.*, TEX. BUS. & COM. CODE § 17.46(b)(5).

The trial court's temporary injunction order found that the Firm "has shown a probability of success on the merits." The order also included findings that Microsoft had "no legal right" to the Firm's files and the Firm and its clients "are suffering"

34

from Microsoft's actions. These findings are relevant to the merits of the Firm's claims for conversion and breach of contract. *See Holmes v. Graves*, No. 01-12-01032-CV, 2013 WL 6506306, at *6 (Tex. App.—Houston [1st Dist.] Dec. 10, 2013, no pet.) (mem. op.) (considering determination of factual issues in temporary injunction proceedings in prior lawsuit, as well as fact that trial court in underlying lawsuit denied merits-based injunctive relief before plaintiff moved to compel arbitration). These findings do not, however, relate to the merits of the Firm's DTPA claim. Thus, although the Firm did not seek arbitration after receiving an adverse ruling on the merits of its claims, the trial court has made some preliminary factual determinations that are relevant to some of the Firm's claims.

### e. Opposition to arbitration

Additionally, the Firm has taken inconsistent positions regarding arbitration throughout the proceedings in the trial court. The Firm acknowledged the MSA's arbitration provision in its original petition and requested injunctive relief "pending arbitration." However, the Firm did not initiate arbitration proceedings after the ancillary judge granted the temporary restraining order or after the 60-day informal dispute resolution period expired in December 2019. Instead, after Microsoft moved to compel arbitration in February 2020, the Firm amended its petition to assert causes of action for breach of contract, conversion, and DTPA violations in addition to its request for injunctive relief "pending arbitration."

The Firm also filed a brief in opposition to Microsoft's motion to compel, arguing that the trial court had authority to grant injunctive relief pending arbitration and that some of the Firm's claims might not be subject to arbitration because they fell within the intellectual property carve-out contained in the MSA. Four months after obtaining injunctive relief, the Firm filed an arbitration demand. Although we have held that the Firm's arguments in its brief in opposition and amended petition were equivocal and did not constitute an express waiver of the right to arbitrate, we may appropriately consider the Firm's shifting arguments with respect to arbitration in determining if it has substantially invoked the judicial process. *See Perry Homes*, 258 S.W.3d at 596 (considering plaintiffs' filing of response opposing arbitration before plaintiffs later sought to compel arbitration "very late in the trial process" after significant amount of discovery had been completed); *In re Citigroup Glob. Mkts., Inc.*, 258 S.W.3d 623, 626 (Tex. 2008) (orig. proceeding) (per curiam) (noting, in concluding that defendant did not expressly or impliedly waive right to arbitration, that defendant "never expressly waived or objected to arbitration").

### f.     Totality of the circumstances

In sum, the Firm was fully aware of the arbitration provision contained in the MSA when it filed suit in district court seeking injunctive relief. The Firm did not immediately initiate arbitration proceedings after the 60-day informal dispute resolution period ended in December 2019. Instead, after Microsoft moved to

compel arbitration in February 2020, the Firm amended its pleadings to assert claims for affirmative relief. The Firm also opposed arbitration in part, arguing that some of its newly added claims fell within the intellectual property carve-out to the arbitration provision. The Firm then waited four months after the trial court granted the injunctive relief to initiate arbitration proceedings against Microsoft.

However, only eight months passed from the time the Firm first filed suit to the time it initiated arbitration proceedings. In its original petition, the Firm sought injunctive relief to recover access to its OneDrive account or to obtain the return of its client files, which it needed to adequately represent its clients, some of whom had immediately pending trial dates. The FAA permits parties to seek preliminary injunctive relief prior to a court ruling on the arbitrability of the claims involved. Additionally, the AAA's Consumer and Commercial Arbitration Rules, while allowing an arbitrator to grant "interim measures" including injunctive relief, specifically state that a party may seek such relief from a "judicial authority" and that such requests are consistent with the right to arbitrate.

The Firm propounded nine requests for production—which sought documents that would be relevant to the injunctive relief that the Firm requested and the merits of the Firm's affirmative claims—and it sought the deposition of Microsoft's corporate representative. The record does not reflect the extent to which Microsoft complied with these requests. Microsoft did not make its corporate representative

available for deposition, although its representative did testify at the temporary injunction hearing. In the temporary injunction order, the trial court made some preliminary findings that were relevant to the Firm's claims for breach of contract and conversion. The trial court did not, however, make any preliminary findings relevant to the Firm's DTPA claim. Importantly, the Firm did not seek a judicial ruling on the merits of its claims for affirmative relief, and the trial court did not make an adverse ruling on the Firm's claims before the Firm initiated arbitration proceedings.

The "hurdle" to demonstrate waiver of the right to arbitration by litigation conduct is a "high one." *G.T. Leach Builders*, 458 S.W.3d at 512. We conclude that, under these facts, Microsoft did not meet its burden to establish that the Firm substantially invoked the judicial process and waived its arbitration rights established in the MSA.[10] *See id.* at 511–12.

---

[10]  Recently, the United States Supreme Court addressed whether federal courts may condition waiver of the right to arbitrate on a showing of prejudice. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712–13 (2022). The Court held that courts may not do so, reasoning that outside of the arbitration context, a waiver inquiry "does not generally ask about prejudice," and courts should not create "special, arbitration-preferring procedural rules." *Id.* at 1713. Here, we have held that Microsoft has not demonstrated that the Firm substantially invoked the judicial process. We therefore need not address whether *Morgan* abrogates the requirement in Texas jurisprudence that a party seeking to establish implied waiver of the right to arbitrate has the burden to show both (1) substantial invocation of the judicial process, and (2) prejudice as a result of the opposing party's inconsistent conduct. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–12 (Tex. 2015).

We therefore hold that the trial court erred by granting Microsoft's motion for an anti-arbitration injunction and enjoining the parties from submitting this case to arbitration. We sustain the Firm's sole issue on appeal.

## Conclusion

We reverse the order granting Microsoft's anti-arbitration injunction. We remand the case to the trial court for entry of an order compelling the parties to arbitrate and staying the underlying proceedings pending completion of the arbitration.

April L. Farris
Justice

Panel consists of Justices Landau, Guerra, and Farris.